UNITED STATES DISTRICT COURT
for the
District of South Dakota

| | |
|---|---|
| In the Matter of the Search of: )<br>INFORMATION ASSOCIATED WITH THE )<br>FOLLOWING FACEBOOK )<br>USER: Chimpy King )<br>URL. https://www.facebook.com/chimpy.king.9 )<br>THAT IS STORED AT PREMISES )<br>CONTROLLED BY FACEBOOK INC. | Case No.   5:20-mj-81 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE "ATTACHMENT A"**, which is attached to and incorporated in this Application and Affidavit

located in the District of _____South Dakota_____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE "ATTACHMENT B"**, which is attached to and incorporated in this Application and Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| [18 U.S.C. 924(c)] | Possessing, Brandishing, and Discharging a Firearm During a Crime of Violence. |
| [18 U.S.C. 1951] | Interference of Commerce by Threats or Violence. |

The application is based on these facts: _____
- ☒ Continued on the attached affidavit, which is incorporated by reference.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.
- ☐ Your applicant requests that no notice be given prior to the execution of the search warrant, i.e., "no knock", the basis of which is set forth in the attached affidavit.
- ☐ Your applicant requests authorization to serve the search warrant any time day or night pursuant to Fed. R. Crim. P. 41(e)(2)(A)(ii), the basis of which is set forth in the attached affidavit.

_____
*Applicant's signature*

____ATF Special Agent Riley Cook____
*Applicant's Name and Title*

Sworn to before me and:   ☐ signed in my presence.
                          ☒ submitted, attested to, and acknowledged by reliable electronic means.


Date:    April 3, 2020                          _____
                                                        *Judge's signature*


City and state:  Rapid City, SD                 _____
                                                Daneta Wollmann, U.S. Magistrate
                                                       *Printed name and title*

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE FOLLOWING FACEBOOK USER:  Chimpy King URL: https://www.facebook.com/chimpy.king.9 THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK INC. | 5:20-mj-81 **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

State of South Dakota  )
                        ) ss
County of Pennington    )

I, Riley Cook, being duly sworn, state as follows:

1.      I am a Special Agent ("SA") with the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), currently assigned to the Rapid City Satellite Office.  I have been employed by the ATF since July, 2014. Prior to ATF, I was employed as a Special Agent with the South Dakota Division of Criminal Investigation where I was assigned to investigate felony crimes including, but not limited to, narcotics trafficking and other types of violent crime. I have completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center ("FLETC").  I have also completed ATF Special Agent Basic Training course. While attending the academies at FLETC in Glynco, Georgia, I received specialized training concerning violations of the Gun Control Act within Title 18 of the United States Code and violations of the National Firearms Act within Title 26 of the United States Code.

2.      As a law enforcement officer, I have participated in numerous federal and state investigations involving the sale, possession, and trafficking of firearms and/or controlled substances.  I have also participated in various armed robbery cases.  Through my participation in

these investigations, I have debriefed numerous defendants, informants, confidential sources, and witnesses who had personal knowledge regarding firearms and/or narcotics trafficking. I have also participated in undercover operations, conducted physical and electronic surveillance, used informants, seized firearms and narcotics, executed search warrants, and made arrests.

3.     I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachments A and B.

4.     This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user IDs.

5.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that evidence of violations of 18 U.S.C. § 924(c) and 18 U.S.C. 1951, are present in the following Facebook account:   user name:   Chimpy King, URL: https://www.facebook.com/chimpy.king.9. There is also probable cause to search the information described in Attachment A for evidence, contraband, or fruits of these crimes, as further described in Attachment B. This affidavit is made for the sole purpose of demonstrating probable cause for the issuance of this search warrant and does not set forth all of my knowledge of this investigation.

## PROBABLE CAUSE

6.     On March 16, 2020, the Rapid City Police Department (RCPD) was dispatched to the Jokers Casino located at 1320 Mount Rushmore Road, Rapid City, SD for a report of an attempted armed robbery. Upon arrival, law enforcement identified Alma Gray as a potential witness to the

attempted armed robbery.  Ms. Gray stated that she had just arrived at Jokers Casino and she observed two (2) individuals running east on Saint James Street.  Ms. Gray stated that both individuals were dressed in black clothing and one (1) of the suspects was in possession of a shotgun.

7.      Law enforcement assisting with the investigation reviewed video recording of the incident captured by security cameras in Jokers Casino.  It was determined that two (2) individuals enter Jokers Casino using the main entrance of Jokers Casino on the south side of the building. Both suspects were wearing dark-colored clothing with their faces covered.  It also appears that both individuals were wearing gloves. One (1) of the suspects is believed to be armed with a modified shotgun (sawed-off) while the second suspect is believed to armed with a semi-automatic pistol.  The video shows both suspects approach the counter and, when no employee is present, turn and quickly exit the casino.  The suspects did not receive any money from Jokers Casino on this date.

8.      On March 16, 2020, the Rapid City Police Department (RCPD) was dispatched to the Rushmore Casino located at 1808 Mount Rushmore Road, Rapid City, SD for the report of an armed robbery.  Upon arrival, law enforcement made contact with Aaron Conners, who was bartending at the time of the armed robbery.  Mr. Conners stated that two (2) suspects entered the casino and stated "give me all the money."  Mr. Connors stated that one (1) of the suspects was in possession of a shotgun while the second suspect was in possession of a black cloth bag in which the suspect placed the money.

9.      Mr. Conners described the suspect with the shotgun as being a white male, approximately 6'1". 160-175 pounds, wearing a black hoodie and a bandana covering the lower portion of his face.  Mr. Conners described the second suspect as a white male, approximately 6'3", 160-175 pounds, wearing a blue hoodie and a bandana covering the lower portion of his face.

3

It was also determined that both suspects were wearing gloves. Pursuant to the investigation, it was found that the suspects had obtained $1,579.49 from the Rushmore Casino. After review of the video recording captured by the Rushmore Casino security cameras, it is believed that the suspects responsible for the armed robbery at Rushmore Casino were also responsible for the attempted robbery at Jokers Casino, also on March 16, 2020.

10.     March 18, 2020, the Rapid City Police Department (RCPD) was dispatched to the Market Square Casino located at 1624 E. Saint Patrick Street, Rapid City, SD for the report of an armed robbery. Upon arrival, law enforcement made contact with Stephanie McCloskey and Robin Wickham, who were both working at the Market Square Casino at the time of the armed robbery. It was determined that two (2) suspects entered the Market Square Casino. One suspect was described as possibly being a Native American male, approximately 6'2", wearing a blue hoodies, jeans, a bandana covering his face, and gloves. The second suspect was described as possibly a Native American male, approximately 5'11", wearing dark-colored clothing with a yellow bandana covering his face and gloves. It was further determined that the taller suspect was equipped with a semi-automatic pistol.

11.     Pursuant to the investigation, it was determined that the two (2) suspects entered the Market Square Casino, approached McCloskey and Wickham, and demanded cash. Ms. McCloskey was in possession of the key to the cash drawer and opened the cash drawer. While the taller suspect held McCloskey and Wickham at gunpoint, the suspect wearing the yellow bandana to cover his face demanded money be placed into a bag that the suspect was holding. McCloskey removed money from the cash drawer and placed the cash in the suspect's bag. The suspects then departed the casino. It was believed that the suspects obtained approximately $700.00 to $800.00 from the Market Square Casino.

12.     On March 21, 2020, the Rapid City Police Department (RCPD) was dispatched to the Rushmore Casino located at 1808 Mount Rushmore Road, Rapid City, SD for a report of an armed robbery. Upon arrival, it was determined that a male suspect wearing a dark-colored hoodie, a bandana covering his face, and gloves approached the casino and brandished a firearm. After entering the casino, the suspect discharged a round from the firearm towards the floor of the casino. It should be noted that other casino patrons were present at the time the firearm was discharged; however, no injuries were sustained.

13.     Following the discharge of the firearm, the suspect approached the clerk's counter and makes contact with Rushmore Casino employee Aaron Conners and demanded cash. The suspect obtained approximately $997.68 from the Rushmore Casino on this date. After receiving the money from the casino, the suspect departed the same door in which he entered. Pursuant to the investigation, it was suspected that the suspected entered a dark-colored four-door sedan after fleeing from the casino. In addition, a .22 caliber shell casing was located on the casino floor as the result of the suspect discharging the firearm. The shell casing was collected by law enforcement and entered into RCPD evidence.

14.     On March 23, 2020, The Rapid City Police Department (RCPD) received an anonymous tip indicating that Shannon LARIVE and Karmen ENGLERT may be responsible for recent armed robberies in Rapid City, SD and may be travelling in a red minivan. Pursuant to the investigation, RCPD Detective James Ingalls and RCPD Detective Barry Young were attempting to locate LARIVE, ENGLERT, and/or the red minivan in which they may be travelling. On this date, a red minivan bearing South Dakota license plate number 2T8382 was observes at the Corner Pantry located at 302 E. North Street, Rapid City, SD. The driver of the vehicle was identified as LARIVE and the front passenger as a female. It was determined that the registered owner of the vehicle, Cassandra Price, did have an active felony warrant.

5

15.     Based on the investigation, it was determined to conduct a traffic stop of the red minivan. A RCPD marked patrol unit initiated a traffic stop of the vehicle. The red minivan accelerated and a vehicle pursuit took place. Ultimately, the suspect vehicle drove down a dead-end street and the suspect vehicle came to a stop. The drive of the suspect vehicle then exited the vehicle and a foot pursuit was initiated. LARIVE, who was identified as the driver of the vehicle was apprehended by law enforcement following a brief foot pursuit.

16.     Law enforcement assisting with the investigation identified multiple passengers in the vehicle; including ENGLERT and Jamie TwoBulls (DOB: 2-25-1992). After receiving consent to search TwoBulls' person, multiple baggies containing white residue were located. The baggies field tested positive for the presence of methamphetamine. A search of the vehicle was also conducted. At that time, multiple items of evidence were collected; including, approximately ninety-one (91) .22 caliber rounds of ammunition and multiple .22 caliber shell casings. It should be noted that the armed robbery suspect discharged a semi-automatic pistol at the Rushmore Casino on March 21, 2020 and a .22 caliber shell casing was recovered as evidence at the casino.

17.     At the time of vehicle/foot pursuit and the apprehension of LARIVE, a firearm was not located. Based on the evidence located in the vehicle and the recent armed robberies, a search for a firearm was conducted along the route of the vehicle and foot pursuits. Initially, a firearm was not located. However, law enforcement later conducted an interview with LARIVE who provided details to the location of the firearm, which LARIVE discarded during the foot pursuit with law enforcement. The firearm, which was identified as a .22 caliber pistol, was later recovered by law enforcement near the area in which LARIVE was apprehended.

18.     On March 23, 2020, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Special Agent (SA) Riley Cook and RCPD Detective James Ingalls conducted an interview with a Source of Information (SOI). The SOI stated that he/she recently met up with an acquaintance

6

of the SOI. The individual goes by "Chimpy LARIVE" on Facebook. The SOI could not immediately identify LARIVE's first name; however, 'Shannon' was provided by SA Cook as a possible first of LARIVE, which the SOI agreed. The SOI described LARIVE as a tall, white male. SA Cook requested the SOI identify LARIVE's Facebook profile. At that time, while utilizing the SOI's cell phone, the SOI identified LARIVE's Facebook profile as 'Chimpy King.' The Facebook profile picture was identified as Shannon LARIVE and Karmen ENGLERT.

19.    The SOI stated that LARIVE committed the armed robbery at the casino near Pauly's Pizzeria & Sub Co. located at 1624 E. Saint Patrick Street, Rapid City, SD, which the Market Square Casino. It should be noted that an armed robbery occurred at the Market Square Casino on March 18, 2020. The SOI stated that he/she socialized with LARIVE shortly after the armed robbery occurred at the Market Square Casino and the SOI received photographs from LARIVE via Facebook showing a large amount of cash. The photographs that the SOI received from LARIVE were sent from LARIVE's 'Chimpy King' Facebook profile. The SOI forwarded the photographs the SOI received from LARIVE to SA Cook. The SOI stated that LARIVE's girlfriend served as the "get-away driver" following the armed robbery.

20.    The SOI stated that he/she believed that LARIVE also committed armed robberies of additional casinos prior to the Market Square Casino. The SOI stated that while socializing at LARIVE's residence, the SOI was able to overhear conversations between LARIVE and ENGLERT regarding the armed robberies. The SOI stated that LARIVE informed the SOI that if LARIVE would ever get caught, LARIVE would have a "shoot out." The SOI stated he/she observed LARIVE in possession of a firearm. The SOI believed that the firearm the SOI observed in LARIVE's possession may not have been operational. The SOI described the firearm in LARIVE's possession as a black pistol. The SOI stated that on March 22, 2020, LARIVE contacted the SOI and discussed an armed robbery in which LARIVE discharged a firearm.

7

21.     On March 23, 2020, ATF SA riley Cook and RCPD Detective Dan Trainer conducted a custodial interview with Shannon LARIVE.  RCPD Detective Trainer read LARIVE the Miranda Warning.  LARIVE stated that he understood his rights and agreed to waive his rights and continue speaking with Detective Trainer and SA Cook.  Detective Trainer then requested information from LARIVE regarding armed robberies that have occurred at multiple casinos in Rapid City, SD.  LARIVE stated the he did not want to "snitch" on the individual responsible for committing the armed robberies.  SA Cook requested any information relating to the armed robberies without identifying the specific individual.  LARIVE stated that law enforcement was recently at Surfwood Apartments attempting to locate the individual and LARIVE recently took items that belonged to the individual from LARIVE's vehicle.  LARIVE ultimately identified the individual as Eric WRIGHT.

22.     Detective Trainer then requested information as to LARIVE's involvement in the multiple casino armed robberies.  LARIVE denied involvement and stated "I don't rob casinos." SA Cook requested information as to the .22 caliber ammunition located by law enforcement in LARIVE's vehicle.  LARIVE stated "it was in that safe right?"  LARIVE then stated that the .22 caliber ammunition belonged to WRIGHT.  LARIVE stated that he WRIGHT provided LARIVE with the key to the safe in which the .22 caliber rounds of ammunition were located prior to WRIGHT eluding law enforcement at the Surfwood Apartments.  LARIVE stated that WRIGHT was located at the Surfwood Apartments, building 100, apartment 34.  LARIVE stated that WRIGHT was in possession of a firearm.  LARIVE stated that he was currently in possession of a .40 caliber pistol.  LARIVE stated that he discharged the .22 caliber pistol in LARIVE's vehicle on the day of this interview.  LARIVE stated that WRIGHT is in black vehicle.  When asked about additional details relating to the vehicle, LARIVE stated "I'm not talking no more, I'm not a

8

snitch." SA Cook asked LARIVE about taking responsibility for his actions and LARIVE again stated "I didn't rob no casino."

23.    SA Cook asked LARIVE if LARIVE utilizes social media. LARIVE denied currently using social media and stated that he formerly utilized Facebook with the profile of 'Shannon Larive.' SA Cook requested information as to LARIVE's current Facebook account. SA Cook informed LARIVE that SA Cook is aware that LARIVE does have an active Facebook account, different than the Facebook account previously provided by LARIVE. SA Cook further stated that he was aware that LARIVE has utilized that Facebook account to share photographs relating to the investigation. SA Cook again requested that LARIVE discuss details surrounding the armed robberies. LARIVE then stated "it was me, Eric Wright, and my girl Karmen."

24.    SA Cook requested LARIVE discuss each armed robbery for which LARIVE was responsible. Detective Trainer added that there has been many armed robberies in the recent past and LARIVE was not responsible for all of them. LARIVE stated that himself, WRIGHT, and ENGLERT were responsible for the Market Square Casino armed robbery that occurred on March 18, 2020. LARIVE stated that he and WRIGHT were responsible for the armed robberies of the casinos on Mount Rushmore Road. LARIVE stated that he and WRIGHT were responsible for the attempted armed robbery at Jokers Casino on March 16, 2020. LARIVE identified that he did not obtain any cash from Jokers Casino. After leaving Jokers Casino, LARIVE and WRIGHT travelled to the Rushmore Casino and was responsible for the armed robbery at the Rushmore Casino on March 16, 2020. Detective Trainer requested information as the armed robbery that occurred at the LaCrosse Street Casino in which the suspect utilized a knife. Initially, LARIVE denied involvement; however, LARIVE then admitted that he committed the armed robbery and ENGLERT was driving.

9

25.     Detective Trainer requested information as to the armed robbery that occurred at the Rushmore Casino on March 21, 2020 where a round was discharged.  LARIVE stated that he did not intentionally discharge the firearm.  LARIVE stated that the firearm belongs to WRIGHT and WRIGHT allows LARIVE to use the firearm.  LARIVE identified the firearm as a .22 caliber pistol.  LARIVE stated that he threw the firearm when LARIVE was running from the vehicle following the vehicle pursuit.  It should be noted that law enforcement located the .22 caliber pistol near the area where LARIVE stopped the vehicle and a foot pursuit was initiated.  LARIVE stated that the firearm did not function as designed and the firearm would discharge without pulling the trigger.  LARIVE stated that the shotgun that was used in the Jokers Casino attempted armed robbery and the Rushmore Casino armed robbery on March 16, 2020 belonged to WRIGHT. LARIVE stated that WRIGHT took possession of the shotgun following the armed robbery. LARIVE described the shotgun as "sawed-off" and a 12 gauge.  LARIVE stated that the shotgun was not loaded at the time of the armed robbery because LARIVE did not have shells for it; however, LARIVE then stated WRIGHT was in possession of the shotgun at the time of the armed robbery.

26.     On LARIVE stated that there was no money remaining from the armed robberies. LARIVE stated that the money obtained from the armed robberies was split between LARIVE, WRIGHT, ENGLERT, and one other individual, identified by LARIVE as Nick BUTLER. LARIVE stated that BUTLER was involved with the armed robbery at Market Square Casino and entered the casino with LARIVE.  ENGLERT was identified as the driver of the vehicle at the time of the Market Square Casino armed robbery.

27.     On Based on the interview with LARIVE, the following information was obtained:

- LARIVE was responsible for the armed robbery (knife brandished) at the Lacrosse Street Casino on March 15, 2020.  ENGLERT was identified as the driver of the vehicle used to depart the area following the armed robbery.

10

- LARIVE and WRIGHT were responsible for the attempted armed robbery (firearm brandished) at Jokers Casino on March 16, 2020.  ENGLERT is believed to be the driver of the vehicle used to depart the area following the armed robbery.

- LARIVE and WRIGHT were responsible for the armed robbery (firearm brandished) at the Rushmore Casino on March 16, 2020.  ENGLERT is believed to be the driver of the vehicle used to depart the area following the armed robbery.

- LARIVE and BUTLER were responsible for the armed robbery (firearm brandished) at the Market Square Casino on March 18, 2020.  ENGLERT was identified to be the driver of the vehicle used to depart the area following the armed robbery.

- LARIVE is responsible for the armed robbery (firearm brandished and discharged) at the Rushmore Casino on March 21, 2020.  ENGLERT is believed to be the driver of the vehicle used to depart the area following the armed robbery.

In addition, on March 23, 2020, LARIVE was in possession of the .22 caliber pistol used in the armed robbery of the Rushmore Casino on March 21, 2020.  LARIVE discarded the firearm following a vehicle pursuit with law enforcement and as a foot pursuit was initiated.  Law enforcement later recovered the .22 caliber pistol.

28.    On March 24, 2020, the following Facebook account belonging to Shannon LARIVE was preserved:

a. Screen Name: Chimpy King

i. https://www.facebook.com/chimpy.king.9

**INFORMATION ON FACEBOOK**

29.    Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.  Facebook allows individuals to specifically communicate with another person through a Facebook application called "Messenger."  In my training and experience, people who engage in online criminal activity often also utilize Facebook to meet victims and other offenders and to chat.  Even if Facebook was not

utilized in the chat at issue, there is probable cause to believe there will be evidence regarding the online solicitation of minors within the target Facebook account.

30.     Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.  Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

31.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.  Facebook also assigns a user identification number to each account.

32.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  Facebook assigns a group identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

33.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.  By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users.  A

Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

34. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

35. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

36. Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own

13

profiles; such comments are typically associated with a specific posting or item on the profile.  In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook.  These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

37.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

38.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages.  Facebook users can "like" Facebook posts or updates, as well as webpages or content on third party (*i.e.*, non-Facebook) websites.  Facebook users can also become "fans" of particular Facebook pages.

39.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.  Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present.  The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend.  The activity log is visible to the user but people who visit the user's Facebook page cannot viewed it.

40.     Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

41.     The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page.  Gifts cost money to purchase, and a personalized message can be attached to each gift.  Facebook users can also send each other "pokes," which are

14

free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

42.     Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

43.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page. Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

44.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

45.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date),

15

the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).   In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.   Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

46.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.   In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account.   This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.   For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time.   Further, Facebook account activity can show how and when the user accessed or used the account.   For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date.   By determining, the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation.   Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation.   Additionally, Facebook builds geo-location into

16

some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

47.     Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED
## AND THINGS TO BE SEIZED

48.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## REQUEST/JUSTIFICATION FOR
## ORDER OF NONDISCLOSURE

49.     The United States respectfully applies for an order of nondisclosure to Facebook under 18 U.S.C. § 2705(b) regarding the following account: User Name: Chimpy King, URL: https://www.facebook.com/chimpy.king.9. The United States is seeking this search warrant for

user information, including all names, addresses, IP addresses, including historical, telephone numbers, other email addresses, information on length and types of services and any means of payment related to these accounts under the authority given by 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A). Based on § 2703(c)(3), the United States is not required to provide notice to the subscriber. Under § 2705(b), the United States may apply to the court for an order commanding Facebook not to notify the subscriber of the existence of the search warrant. The court may decide what length of time shall apply to the order of nondisclosure if the court determines the notification to the subscriber could result in one of the five factors listed in the statute, which includes destruction of or tampering with evidence. 18 U.S.C. § 2705(b)(3). The basis for the request is that such disclosure could cause any person with access to the accounts, or any related account or account information, to tamper with or modify the content or account information and thereby destroy or tamper with evidence and otherwise seriously jeopardize the investigation. Especially due to the ease of access to Facebook, its content can be modified by persons with internet access and sufficient account information. As such, the United States respectfully requests this Court enter an order commanding Facebook not to notify the user of the existence of this warrant.

## REQUEST FOR SEALING

50.     I further request that the Court order that the matter be sealed until further order of the Court. The matter is an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal the matter because premature disclosure may seriously jeopardize the ongoing investigation.

## LIMIT ON SCOPE OF SEARCH

51.     I submit that if during the search, agents find evidence of crimes not set forth in this affidavit, another agent or I will seek a separate warrant.

18

## **CONCLUSION**

52.     Based on the forgoing, I request that the Court issue the proposed search warrant.

53.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).

54.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Dated:_ April 3, 2020_____

Special Agent Riley Cook
Bureau of Alcohol, Tobacco, Firearms and
Explosives

SUBSCRIBED and SWORN to

_____ in my presence

__X_ by reliable electronic means

this 3rd day of April, 2020.

DANETA WOLLMANN
U.S. MAGISTRATE JUDGE

**<u>ATTACHMENT A</u>**

**Property to Be Searched**

This warrant applies to information associated with the following Facebook user IDs that are stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California:

- User Name: Chimpy King;

- URL: https://www.facebook.com/chimpy.king.9

## ATTACHMENT B

### Particular Things to be Seized

**I.        Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

All contact and personal identifying information, including for Facebook user ID:  user name: Chimpy King, URL: https://www.facebook.com/chimpy.king.9

(a)     Including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)     All activity logs for the accounts and all other documents showing the user's posts and other Facebook activities;

(c)     All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(d)     All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers;

2

future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f)     All "check ins" and other location information;

(g)     All IP logs, including all records of the IP addresses that logged into the accounts;

(h)     All records of the accounts' usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i)     All information about the Facebook pages that the accounts are or were a "fan" of;

(j)     All past and present lists of friends created by the accounts;

(k)     All records of Facebook searches performed by the accounts;

(l)     All information about the users' access and use of Facebook Marketplace;

(m)     The types of service utilized by the user;

(n)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the accounts;

(p)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook accounts, including contacts with support services and records of actions taken.

## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. 924(c), Possessing, Brandishing, and Discharging a Firearm During a Crime of Violence and 18 U.S.C. 1951, Interference of Commerce by threats or Violence, from January 1, 2019, to present, including, for each user IDs identified on Attachment A.

## III.    Information Regarding Search Warrant Compliance by Facebook:

Facebook shall disclose responsive data, if any, by sending to:

> Special Agent Riley Cook
> Bureau of Alcohol, Tobacco, Firearms and Explosives
> 1825 Clear View Lane, Suite 201
> Rapid City, SD  57702
> Riley.Cook@atf.gov
> (406)-694-6620

Facebook shall use the United States Postal Service or another courier service to disclose the responsive data, notwithstanding 18 U.S.C. § 2252A or similar statute or code.

### CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS
### RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by Facebook, and my official title is _____. I am a custodian of records for Facebook. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Facebook, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

    a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

    b.    such records were kept in the ordinary course of a regularly conducted business activity of Facebook; and

    c.    such records were made by Facebook as a regular practice.

    I further state that this certification is intended to satisfy Rules 902(11) and (13) of the Federal Rules of Evidence.

_____    _____
Date    Signature

5

# UNITED STATES DISTRICT COURT
### for the
District of South Dakota

In the Matter of the Search of )
INFORMATION ASSOCIATED WITH THE )
FOLLOWING FACEBOOK USER: Chimpy ) Case No. 5:20-mj-81
King )
URL: https://www.facebook.com/chimpy.king.9 )
THAT IS STORED AT PREMISES )
CONTROLLED BY FACEBOOK INC. )

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of ___South Dakota___ *(identify the person or describe the property to be searched and give its location)*:

See **ATTACHMENT A**, attached hereto and incorporated by reference

I find that the affidavit, or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Evidence of a crime in violation of 18 U.S.C. § 2422(b), as described in **ATTACHMENT B**, attached hereto and incorporated by reference.

I find that the affidavit, or any recorded testimony, establishes probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before ___April 17, 2020___ *(not to exceed 14 days)*

☒ in the daytime 6:00 a.m. to 10 p.m. ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ___Daneta Wollmann___ .

*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*. ☐ until, the facts justifying, the later specific date of _____

.
☐ I find that good cause has been established to authorize the officer executing this warrant to not provide notice prior to the execution of the search warrant, i.e., "no knock".

Date and time issued:   April 3, 2020 at  3:00 pm

_Judge's signature_

City and state:      Rapid City, SD

Daneta Wollmann, U.S. Magistrate
_Printed name and title_

cc:  AUSA Patterson
clr

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>5:20-mj-81 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| Certification |
|---|

     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

                                             _____
                                                  *Executing officer's signature*

                                             _____
                                                     *Printed name and title*